UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRACEY RAINER,

                Plaintiff,

v.                                              Case No. 20-cv-1633-pp

RN JANE DOE,

                Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT**

Tracey Rainer, an inmate at Waupun Correctional institution (WCI) who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that a registered nurse at his prison inappropriately gave him medication that he used to attempt suicide. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens the complaint, dkt. no. 1.

## I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to let a prisoner plaintiff proceed without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay

the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On October 28, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $28.01. Dkt. No. 6. The court received that fee on November 9, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

  A. <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The plaintiff alleges he has a history of suicide attempts. Dkt. No. 1 at ¶1. Because of his history, the institution's Health and Psychological Services Units implemented a "care plan" for the plaintiff that requires either nursing staff or correctional staff to dispense the plaintiff's medication, including over-the-counter pills like acetaminophen. Id. at ¶2. On October 12, 2018, Registered Nurse (RN) Jane Doe dispensed "non-control medications" to prisoners in the South Cell Hall. Id. at ¶3. RN Jane Doe issued the plaintiff

seventy-three tablets of acetaminophen. Id. at ¶4. The plaintiff alleges that "RN Jane Doe chose not to educate herself with [his] medical file which 'red-flags' issuing non-control medications to [the plaintiff]" because of his "suicidal ideations and suicide attempts with pills." Id. at ¶5. The plaintiff alleges that RN Doe's actions resulted in his "ingest[ing] 30-to-70" of Tylenol that day. Id. at ¶7.

The plaintiff was taken to Waupun Memorial Hospital "for overdose due to Acetaminophen toxin." Id. at ¶8. The plaintiff alleges he remained at the hospital for one day, but also alleges he did not return to WCI until October 17, 2018—five days after the overdose. Id. at ¶9. When he returned to the institution, he was placed in clinical observation because of his suicide attempt. Id. On October 25, 2018, the plaintiff wrote to Health Service Unit Manager Crystal Marchant (who is not a defendant) complaining that RN Jane Doe had been negligent. Id. at ¶10. The plaintiff filed an inmate complaint about RN Jane Doe's actions. Id. at ¶11. On October 26, 2018, an inmate complaint examiner affirmed the plaintiff's grievance.[1] Id.

The plaintiff seeks injunctive relief ordering the Department of Corrections "to conduct an audit on the health service unit" and "to conduct education and training to its LPNs and RNs concerning the proper reading of medical records." Id. at 4. He also seeks a declaration that his Eighth

---

[1] In paragraph 10 of his complaint, the plaintiff cites "Attachment #1." Dkt. No. 1 at ¶10. In paragraph 11 he cites "Attachments #2, #3, #4 and #5." Id. at ¶11. There are no attachments to the complaint.

4

Amendment rights were violated and punitive and compensatory damages against RN Jane Doe. Id.

   C.   Analysis

The court reviews the plaintiff's allegations against RN Jane Doe under the Eighth Amendment, which "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). To state a valid Eighth Amendment claim, the inmate must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)); see Estelle v. Gamble, 429 U.S. 97, 103 (1976).

The Court of Appeals for the Seventh Circuit has explained that suicide, attempted suicide and other acts of self-harm pose "a serious harm" that satisfies the objective component of an Eighth Amendment claim. Estate of Miller, *ex rel.* Bertram v. Tobiasz, 680 F.3d 984, 989 (7th Cir. 2012) (citing cases); see Collins v. Seeman, 462 F.3d 757, 760 (7th Cir. 2006). The plaintiff alleges he has a history of suicide attempts through ingesting pills; that allegation sufficiently states an objectively serious risk of harm.

To satisfy the subjective component of the deliberate indifference standard, the plaintiff must show that the defendant knew he "was at

5
Case 2:20-cv-01633-PP   Filed 01/25/21   Page 5 of 11   Document 8

substantial risk" of harming himself and "intentionally disregarded the risk." Collins, 462 F.3d at 761. It is not enough to show that "a prison official *should have been* aware" of the risk; the defendant "'must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Estate of Novack ex rel. Turbin v. County of Wood, 226 F.3d 525, 529 (7th Cir. 2000) (emphasis in original)); see also Farmer, 511 U.S. at 838 (clarifying that "an official's failure to alleviate a significant risk that he should have perceived but did not" does not constitute deliberate indifference to that risk).

The plaintiff does not allege that RN Jane Doe was aware of his tendency to attempt suicide by taking pills and disregarded the risk to his health by giving him the pills. He alleges that she *should have known* about his suicidal history but "chose not to educate herself with [his] medical file." Dkt. No. 1 at ¶5. That allegation sounds like a claim of negligence, not deliberate indifference. Negligence—even gross negligence—does not violate the Constitution. See Farmer, 511 U.S. at 835–36; Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001).

But the plaintiff alleges that Jane Doe "*chose* not to" review his medical file. Dkt. No. 1 at ¶5 (emphasis added). He suggests that Jane Doe disregarded her duty to review his medical chart and ignored a potential risk to his health by giving him the seventy-three acetaminophen tablets. The plaintiff also alleges the Health Services Unit had implemented a "care plan" directing that only nursing staff or correctional officers could dispense the plaintiff's

6
Case 2:20-cv-01633-PP   Filed 01/25/21   Page 6 of 11   Document 8

medication because of his history of overdosing on pills. This suggests that any member of the nursing staff who dispense medication to the plaintiff should have known of the reason for the care plan's requirement that only nursing staff or corrections staff could dispense him medication. While it is a close call, at the pleading stage, construing the plaintiff's allegations in his favor, the court will allow the plaintiff to proceed on a claim that RN Doe was deliberately indifferent to his serious medical need.

The plaintiff asserts at ¶6 of his complaint that Jane Doe and all other corrections officials were required to provide him with a safe environment under Wis. Admin. Code §§DOC 306.03 and 306.04. Dkt. No. 1 at ¶6. While it is not clear, the plaintiff may be attempting to assert a claim against Doe under these administrative statutes. But §1983 allows a plaintiff to sue only for violations of federal law or the federal Constitution, not for violations of state law. And a violation of prison policies or regulations does not establish a constitutional violation. See Pulera v. Sarzant, 966 F.3d 540, 551 (7th Cir. 2020) (citing Thompson v. City of Chi., 472 F.3d 444, 454 (7th Cir. 2006)); Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017). To the extent that the plaintiff seeks to proceed on a claim that Doe violated these administrative statutes, the court will not allow him to do so.

Because the plaintiff does not know the real name of RN Doe, the court will add Waupun Warden Randall Hepp as a defendant for the limited purpose of helping the plaintiff identify the defendant. See Donald v. Cook Cty. Sheriff's Dept., 95 F.3d 548, 556 (7th Cir. 1996). Warden Hepp does not have to

7
Case 2:20-cv-01633-PP    Filed 01/25/21    Page 7 of 11    Document 8

respond to the complaint. After Warden Hepp's attorney files an appearance in this case, the plaintiff may serve discovery on Warden Hepp (by mailing it to Hepp's attorney at the address in his notice of appearance) to ask for information that will help him identify the name of the defendant.

For example, the plaintiff may serve interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34. Because the plaintiff has not stated a claim against Warden Hepp, he must limit his discovery requests to asking for information or documents that will help him learn the real name of RN Doe. The plaintiff may not ask Warden Hepp about any other topic, and Warden Hepp is under no obligation to respond to requests about any other topic.

After the plaintiff learns the name of RN Doe, he must file a motion to substitute her name for the Jane Doe placeholder. Once he does that, the court will dismiss Warden Hepp as a defendant. After RN Doe has an opportunity to respond to the complaint, the court will set a deadline for completing discovery and filing dispositive motions. At that point, the plaintiff may use discovery to obtain information relating to his claim that RN Doe was deliberately indifferent.

The plaintiff must identify the name of the Jane Doe defendant within sixty days of the date Warden Hepp's attorney enters a notice of appearance. If the plaintiff does not identify RN Doe or explain to the court why he is unable to do so within sixty days of Hepp's attorney entering an appearance, the court

may dismiss the case based on the plaintiff's failure to diligently pursue it. Civil Local Rule 41(c) (E.D. Wis.).

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that Warden Randall Hepp is named as a defendant for the limited purpose of helping the plaintiff identify the real name of RN Doe. The clerk's office must update the docket accordingly.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court has electronically transmitted a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendant Warden Hepp. The court **ORDERS** that Warden Hepp does not have to respond to the substance of the plaintiff's complaint; he must respond only to the plaintiff's discovery requests related to identifying RN Jane Doe.

The court **ORDERS** that the plaintiff must identify the real name of RN Jane Doe **within sixty days** of the date that Warden Hepp's attorney files a notice of appearance. If the plaintiff does not file a motion to substitute RN Jane Doe's real name, or explain to the court why he cannot do so, within sixty days of the date Warden Hepp's lawyer files an appearance, the court may dismiss the case based on the plaintiff's failure to diligently pursue it. Civil L.R. 41(c).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$321.99** balance of the filing fee

9

by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The plaintiff also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing the case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 25th day of January, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**